# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ELIZABETH HITCHCOCK,

      Plaintiff,

v.                                        Case No. 3:20-cv-328-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from September 11, 2014, the alleged disability onset date, through April 24, 2019, the date of the ALJ's decision.[2] (Tr. 16-29, 36-92.)

In reaching the decision, the ALJ found that Plaintiff had the following

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 17.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 17.)

severe impairments: a history of cerebrovascular accident with stenosis to left common carotid artery; hypertension; cervicalgia; lumbago; obesity; ventral hernia; encephalopathy; depression; and anxiety.  (Tr. 19.)

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work.[3]  (Tr. 21.)  Then, at step four of the sequential evaluation process,[4] based on the testimony of the vocational expert ("VE") and considering Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a fast foods worker and a fast foods manager as generally performed because this work did not require the performance of work-related activities precluded by the RFC.  (Tr. 28-29.)  Although the VE testified that Plaintiff performed this past relevant work at the medium exertion level, the ALJ found that Plaintiff is capable of performing this past work "as generally performed," *i.e.*, at the

---

[3] Specifically, the ALJ found that Plaintiff had the ability to perform light work, "including the ability to lift and carry 20 pounds occasionally and 10 pounds frequently and to sit for 6 hours, stand for 6 hours, and walk for 6 hours each in a[n] 8-hour workday," as follows:

> She could push and pull as much as she could lift and carry.  She could climb ramps and stairs occasionally and never climb ladders and scaffolds or crawl.  She could balance, stoop, and crouch frequently. She could kneel occasionally.  Due to mental symptoms, the claimant would be off task 10% in an 8-hour workday, in addition to normal breaks.

(Tr. 21.)

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

2

light exertion level.  (*Id.*)  Thus, the ALJ found that Plaintiff was not disabled at any time from September 11, 2014, the alleged onset date, through April 24, 2019, the date of the decision.  (Tr. 29.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from September 11, 2014 through April 24, 2019.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

### A.    The Parties' Positions

Plaintiff raises two issues on appeal.[5]  First, she argues that the ALJ erred in finding that Plaintiff could perform her past relevant work and that the ALJ's error was not harmless.  (Doc. 20 at 11-16.)  Plaintiff contends that her past relevant work qualified as a composite job, and composite jobs cannot be "'generally performed' because they do not have any specific counterpart in the DOT."  (*Id.* at 11-12.)  Plaintiff explains:

> Here, the VE testified that Plaintiff had performed the duties of a fast-food manager and a fast-food worker.  (Tr. 86).  In response to questioning from Plaintiff's counsel, the VE clarified that this was a composite job because Plaintiff worked as a shift

---

[5] In her second argument, Plaintiff contends that the ALJ's reasons for giving little weight to the opinion of the consultative psychologist, Peter Knox, M.Ed., Psy.D. are not supported by substantial evidence.  (Doc. 20 at 16-19.)  Defendant counters that the ALJ's finding that Dr. Knox's opinion was due little weight is supported by substantial evidence.  (Doc. 21 at 13-16.)  However, the Court agrees with Plaintiff on the first issue, and, therefore, does not address the remaining issue in detail.

leader and an assistant manager.  (Tr. 88).  The VE also stated that a person with the limitations in the hypothetical question could perform this job as it was generally performed but not as Plaintiff actually performed it. (*See* Tr. 86-87).  The ALJ adopted this testimony in the decision.  (*See* Tr. 28-29.)

Plaintiff respectfully submits that the ALJ erred in adopting the VE's testimony that Plaintiff could perform her past work as it was generally performed.  As noted above, a composite job cannot be "generally performed," as it borrows job duties from two or more DOT codes but has no direct counterpart in the DOT.  POMS [Program Operations Manual System] DI § 25005.020(B).[6]  Because the VE acknowledged that Plaintiff could not perform her past work as she actually performed it, the ALJ should have found that Plaintiff could not return to her past work, and should not have denied Plaintiff's claim at Step Four of the sequential evaluation process.

(*Id.* at 12-13.)

Plaintiff asserts that the ALJ's error was not harmless because, even though the VE stated that there were other jobs Plaintiff could perform that were light, unskilled work (*i.e.*, ticket taker, ticket seller, and assembler II), the "Court cannot affirm the agency's decision based on that testimony because the Commissioner's Medical-Vocational Guidelines, or 'grids,' suggest that Plaintiff could be found to be disabled if she is unable to return to her past relevant work."  (*Id.* at 13.)

---

[6] "The Social Security Administration's POMS is the publicly available operating instructions for processing Social Security claims."  *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 n.1 (11th Cir. 2018) (citing *Wash. State Dep't of Soc. & Health Servs. v. Keffler*, 537 U.S. 371, 385 (2003)).  "While the 'administrative interpretations' contained within the POMS 'are not products of formal rulemaking, they nevertheless warrant respect.'"  (*Id.*) (citing *Keffler*, 537 U.S. at 385; *Stroup v. Barhart*, 327 F.3d 1258, 1262 (11th Cir. 2003)).

Plaintiff further contends that "application of the grids suggests that [she] would have received at [sic] a partially favorable decision on her application if the ALJ had correctly found that she is unable to perform her past relevant work." (*Id.* at 14.)  According to Plaintiff,

> [She] turned 55 . . .  prior to the hearing.  (*See* Tr. 199) . . . Therefore, she was a person of advanced age under the Commissioner's regulations.  20 C.F.R. § 404.1563(e).  The ALJ found that Plaintiff was limited to the light level of exertion due to her medical impairments.  (*See* Tr. 21).  The VE did not testify during the hearing that Plaintiff had any transferable skills. (*See* Tr. 84-89).  The Grids direct a finding of 'disabled' for a person with all of those vocational characteristics.  20 C.F.R. Pt. 404, Subpt. P, App'x 2, Table 2, § 202.06.  The VE's testimony that there were certain light jobs that the hypothetical individual could perform cannot override the grids.  SSR 83-5A, 1983 WL 31250, at *1-2 (S.S.A. 1983); *Lounsbury*, 468 F.3d at 1116.

(*Id.* at 14-15.)  Thus, Plaintiff argues, "the Court cannot uphold the unfavorable decision based on a harmless-error analysis at Step Five.  If the ALJ had correctly found that Plaintiff could not perform her past relevant work, Plaintiff would likely have received a partially favorable decision under the grids as of her fifty-fifth birthday." (*Id.* at 15.)  Plaintiff seeks remand for further vocational findings because the VE did not specifically state "whether Plaintiff did or did not have transferrable skills."  (*Id.* at 15 n.1.)

Defendant counters that substantial evidence supports the ALJ's step four finding that Plaintiff could perform her past relevant work.  (Doc. 21 at 4-12.)  Specifically, with respect to Plaintiff's first argument, Defendant

asserts:

> In support of her claim, Plaintiff submitted paperwork
> describing her past relevant work which consisted of various jobs
> at fast food restaurants (Tr. 249).  From July 2001 through
> September 2007, Plaintiff worked at Popeyes (Tr. 249).  In that
> job, she cooked food, did paperwork, and handled some store
> closing duties (Tr. 252).  Although she supervised three to four
> employees, only half of her time was spent supervising and she
> was not a lead worker (Tr. 252).  From October 2004 until
> February 2008, Plaintiff worked at Subway (Tr. 249).  She again
> prepared food and handled paperwork for end-of-day closing (Tr.
> 251).  In this role, she supervised one to two people, but again
> was not a lead worker (Tr. 251).  As with her first Popeyes' job,
> she only spent half of her time supervising employees (Tr. 251).
> Plaintiff returned to Popeyes in March 2008 and remained there
> until September 2014 (Tr. 249).  In this position, she ran the
> shift, packed orders, and handled daily paperwork (Tr. 250).
> Plaintiff also supervised eight to ten employees for the entirety of
> her shift and was a lead worker (Tr. 250).  However, she could
> not hire or fire employees (Tr. 250).
>
> At the hearing, the ALJ called upon the VE to classify
> Plaintiff's past relevant work using the Dictionary of
> Occupational Titles (DOT) for reference (Tr. 85-86).  After
> reviewing the records and testimony related to Plaintiff's work
> history, the VE testified that Plaintiff's past relevant work fit the
> description of "manager, fast-food services, DOT Code 185.137-
> 010" (Tr. 85-86).  The VE also classified Plaintiff's past relevant
> work as "fast-food worker, . . . DOT code 311.472-010" (Tr. 86).
> The ALJ then asked the VE if an individual with Plaintiff's past
> relevant work, as classified by the VE, and with an RFC for less
> than the full range of light work corresponding to the Plaintiff's
> RFC, would be able to perform Plaintiff's past relevant work (Tr.
> 86-87).  The VE testified that the individual would be able to
> perform the identified jobs as generally performed, but not as
> actually performed (Tr. 87).
>
> In the decision, the ALJ credited the VE's testimony and
> found that Plaintiff's past relevant work included the jobs of fast
> foods worker and fast foods manager (Tr. 28-29).  The ALJ also
> credited the VE's testimony that an individual with Plaintiff's
> vocational profile and RFC would be able to perform the fast

foods worker and fast foods manager jobs (Tr. 29).  The ALJ then compared Plaintiff's RFC with the physical and mental demands of these jobs as generally performed (Tr. 29).  *See* DOT § 185.137-010, 1991 WL 671285 (describing requirements of the fast foods manager position); DOT § 311.742-010, 1991 WL 672682 (describing requirements of the fast foods worker position); *see also* 20 C.F.R. § 404.1560(b)(2) (providing that the ALJ may consider both testimony from a VE and the DOT to help determine if a claimant can do her past relevant work); *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018) (recognizing that the regulations allow an ALJ to consult the DOT and take testimony from a VE in determining whether a claimant can still perform past relevant work).

Thus, the ALJ articulated a clear basis for finding that Plaintiff could perform her past relevant work, and Plaintiff's work history documents, the VE testimony, and DOT job descriptions constitute substantial evidence in support of the ALJ's step-four finding.  . . .  Accordingly, Plaintiff was required to show that she was unable to perform her past relevant work as generally performed.  . . .  Plaintiff failed to do so.

(Doc. 21 at 6-8.)

Defendant also notes that Plaintiff argues that the ALJ's finding "that she could perform her past work as it is generally performed" was not supported by substantial evidence where it was "contradicted by the VE's testimony, given in response to questioning by Plaintiff's attorney, that her past work as a fast foods work[er] and fast foods manager 'was more of a composite job.'"  (*Id.* at 8.)  However, Defendant contends, "the ALJ did not credit this testimony and did not find that Plaintiff's past relevant work was a composite job (Tr. 28-29)."  (*Id.*)  Defendant also argues that "it is not the role of the reviewing court to reweigh the evidence or make credibility

findings; rather, the question [for] the reviewing court is whether substantial evidence supports the ALJ's decision." (*Id.*)  Defendant further contends that Plaintiff had the burden to show the absence of substantial evidence supporting the ALJ's conclusion, but failed to do so.  (*Id.* at 9.)

Defendant further argues that "Plaintiff's past relevant work is readily classified by the DOT as fast foods worker and fast foods manager."  (*Id.*) Defendant explains:

> Specifically, her first Popeyes job (Tr. 252) and her Subway job (Tr. 251) fit the DOT description of fast foods worker, which may require such tasks as:
>> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill.  Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag.  Notifies kitchen personnel of shortages or special orders.  Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker.  Presses lids onto beverages and places beverages on serving tray or in takeout container.  Receives payment.  May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

(*Id.* at 9-10 (citing DOT § 311.472-010, 1991 WL 672682).)  Defendant argues that while Plaintiff's role "'may have involved functional demands and job duties *significantly in excess* of those generally required for the job by other employers throughout the national economy,'" her "inability to perform these

'excessive functional demands'" did not render her disabled under the Act. (*Id.* at 10 (quoting SSR 82-61, at \*2).)  According to Defendant, "[t]he fact that Plaintiff had some limited supervisory and paperwork duties in her first job with Popeyes and her job with Subway did not convert these positions into composite jobs (Tr. 251-52)."  (*Id.*)

Defendant also maintains that even assuming Plaintiff could not handle "the additional supervisory and paperwork duties, the ALJ found that she was able to perform the job of fast foods worker as generally performed, not as she actually performed it (Tr. 28-29)."[7]  (*Id.*)  However, Defendant argues, Plaintiff "failed to show, or even argue, that she was unable to perform this job as generally performed."  (*Id.*)

Defendant contends that Plaintiff's most recent job with Popeyes fit within the description of the DOT for a fast foods manager job, providing:

> Manages franchised or independent fast food or wholesale prepared food establishment: Directs, coordinates, and participates in preparation of, and cooking, wrapping or packaging types of food served or prepared by establishment, collecting of monies from in-house or take-out customers, or

---

[7] Defendant also explains that "[t]he ALJ's finding that Plaintiff could not perform her past work as actually performed was not based on a finding that she could not perform supervisory duties," but "[r]ather the VE testified that Plaintiff performed her past relevant work at the medium exertional level, but the RFC finding restricted Plaintiff to light level work (Tr. 21, 85-86)."  (Doc. 21 at 10 n.2.)  Thus, "[b]ecause she could not perform medium level work, she could not perform her past work as she had actually performed it."  (*Id.*)  "However, the DOT provides that the jobs of fast foods worker and fast foods manager, as generally performed, are at the light exertional level, which is consistent with Plaintiff's RFC (Tr. 21, 28-29)."  (*Id.* (citation omitted).)

assembling food orders for wholesale customers.  Coordinates activities of workers engaged in keeping business records, collecting and paying accounts, ordering or purchasing supplies, and delivery of foodstuffs to wholesale or retail customers. Interviews, hires, and trains personnel.  May contact prospective wholesale customers, such as mobile food vendors, vending machine operators, bar and tavern owners, and institutional personnel, to promote sale of prepared foods, such as doughnuts, sandwiches, and specialty food items.  May establish delivery routes and schedules for supplying wholesale customers. Workers may be known according to type or name of franchised establishment or type of prepared foodstuff retailed or wholesaled.

(*Id.* at 11 (citing DOT § 185.137-010, 1991 WL 671285).)  According to Defendant, while Plaintiff "may not have performed all possible duties encompassed in the description, there is no requirement that a claimant must have performed the complete range of duties for past relevant work to fit within a DOT classification."  (*Id.*)  Moreover, Defendant argues, "[i]n her most recent role at Popeyes, Plaintiff ran the shift, supervised all employees on shift, handled all the paperwork, and assisted with packing orders," such that these tasks "readily correspond to the DOT description for fast foods manager."  (*Id.* at 11-12.)

Defendant concludes that the ALJ "did not err in finding that Plaintiff's past relevant work, comprised of three different jobs, could be classified under two DOT codes (Tr. 28-29, 249-51)."  (*Id.* at 12.)  "To establish that her job was a composite job, Plaintiff had to show that her job was 'one that has significant elements of two or more occupations and, as such, has no

11

counterpart in the [DOT]." (*Id.* (quoting SSR 82-61, 1982 WL 31387 at *2).)

However, Defendant contends:

> By her own description, Plaintiff worked three different fast food jobs, culminating in a role as shift manager for Popeyes. This is not a situation where any one job had significant elements of two or more occupations. Although her first two jobs had limited additional duties related to paperwork and supervising a small group of employees, such additional duties did not automatically convert the jobs to composite jobs. *See* SSR 82-61. Because the record as a whole provides substantial evidence in support of the ALJ's step-four finding that Plaintiff's past relevant work could be categorized by the DOT, and she could perform such work as generally performed, the finding should be affirmed. . . .

(*Id.*)

## B.   Relevant Record Evidence and Administrative Findings

In her Work History Report dated January 16, 2017, Plaintiff reported that in the 15 years before becoming unable to work, she had the following jobs: assistant manager at Popeyes from March 2008 until September 2014; shift leader at Subway from October 2004 until February 2008; and assistant manager at Popeyes from July 2001 until September 2004. (Tr. 249.) Plaintiff described her duties in her most current assistant manager position at Popeyes as running the shift, packing orders, and completing daily paperwork. (Tr. 250.) She stated that in this job, she used machines, tools, or equipment, used technical knowledge or skills, and required writing, completing reports, or the performance of duties like these. (*Id.*) She also

12

indicated, *inter alia*, that she supervised eight to ten people all day in this position, she did not "hire and fire employees," and she was a "lead worker." (*Id.*)

In her job at Subway as a shift leader, Plaintiff stated that she prepared bread and vegetables, made sandwiches, and prepared end-of-day paperwork. (Tr. 251.) She again noted using machines, tools, or equipment, using technical knowledge or skills, and engaged in writing, completing reports, or similar duties. (*Id.*) She also reported, in relevant part, that she supervised one to two people and that half her time was spent supervising people. (*Id.*) Plaintiff did not "hire and fire" employees and was not a lead worker. (*Id.*)

As to her earlier job at Popeyes, she described her position as "cook – [assistant] manager[]." (Tr. 252.) She described this job as follows: "cook chicken, filter fryers, season chicken [and] [seven months] later Im [sic] assistand [sic] manager, and doing paper work and closeing [sic] the store and all the paper work." (*Id.*) She stated, in relevant part, that she supervised three to four people and half her time was spent supervising, but she did not hire and fire employees and she was not a lead worker. (*Id.*)

Upon questioning by the ALJ at the administrative hearing, the VE testified as follows:

    Q.    Would you summarize her past jobs and explain the skill

and exertional level of those jobs?

A.     Yes, Your Honor.  She worked as a manager, fast-food services, DOT code 185.137-010.  That has an SVP ["Specific Vocational Preparation"] of 5.  It is generally performed at the light exertional level.  The claimant performed it in the medium exertional level as well.

Q.     Okay.  Does that encompass both positions, with Popeye's [sic] and the other?

A.     Because she was a working manager and did not have the ability to hire and fire, I actually reduced the SVP to 4 for this Claimant.

Q.     Okay.

A.     And I feel like she also performed the duties of a fast-food worker, and that is DOT code 311.472-010.  It has an SVP of 2. It's generally performed at the light exertional level, and again, the Claimant performed it in the medium exertional level, as well as the light [exertional level].

Q.     Okay. Assume a hypothetical individual with the past jobs that you described.  Further, assume the individual is limited to less than the full range of light work with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, sit for up to 6 hours, stand for up to 6 hours, and they could walk for up to 6 hours.  They could push and pull as much as they can lift and carry.  Occasionally climbing ramps and stairs.  They should never climb any ladders or scaffolds.  Balancing, stooping, and crouching would be reduced to frequent.  They could occasionally kneel.  Never crawl.  In addition to normal workday breaks, they'd be off task up to 5% of the 8-hour workday.  Could that hypothetical individual perform any of the past jobs that you just described?

A.     No, Your Honor.

Q.     What would preclude that work?

A.     As a fast-food manager and as a fast-food worker, I believe this individual would be required to stand more than six hours.

Q.     Okay.  But that's the basic definition of light work, standing and walking up to six hours.

. . .

A.     Let me clarify my answer.

Q.     Okay.

A.     I feel like this individual could perform the fast-food worker position as generally performed - -

Q.      Okay.

A.      - - but not as actually performed.

Q.      Okay.  And could that hypothetical individual perform other work, and if so, some examples of that work?

A.      Yes, I believe this hypothetical individual could perform the position of ticket taker, DOT code 344.667-010.  It has an SVP of 2.  It is performed at the light exertional level.  There are 42,000 in the national economy.  Also, the position of ticket seller, DOT code 211.467-030.  It has an SVP of 2.  It is performed at the light exertional level.  There [are] 60,000 in the national economy.  Also[,] the position of assembler II, DOT code 723.684-018.  It has an SVP of 2.  It is performed at the light exertional level, and there are 45,000 in the national economy.

Q.      Okay.  And assume the same hypothetical as #1, but the individual would be off task up to 10% of the 8-hour workday.  Could that hypothetical individual perform the past job?

A.      Yes, Your Honor.

Q.      And could they perform the other three jobs that you provided?

A.      Yes, Your Honor.  . . .

(Tr. 85-88.)

Then, upon questioning of the VE by Plaintiff's attorney, the following

testimony was recorded:

Q.      Ms. Hadley, would you agree that the two jobs that you provided were more of a composite job, since she was a shift leader and assistant manager?

A.      Yes.

ATTY:      Okay.  And so[,] my question to you would then be . . . if she was limited to simple work, then that would eliminate past work, and she would grid at light.

ALJ:      Yes.

. . .

BY ATTORNEY:

Q.      So[,] . . . [if] you took the [ALJ's] first hypothetical and limited that person to simple, routine tasks, would that eliminate her past work?

A.      It would eliminate the composite work, so the work as

actually performed.

. . .

A.      As a manager.

ALJ:  And under our rules, if one of those two positions are eliminated, the other one - -

ATTY:        Yes.

ALJ:  --is eliminated as well.

(Tr. 88-89.)

At step four of the decision, based on the testimony of the VE and considering Plaintiff's RFC of a reduced range of light work, the ALJ determined that Plaintiff was capable of performing her past relevant work as a fast foods worker and fast foods manager as generally performed.  (Tr. 28.)  The ALJ specifically noted that the VE testified that Plaintiff's past relevant work was characterized in the DOT as: (1) "Fast foods manager ([DOT number] 185.137-010): light, semiskilled work with a[n] [SVP] of 5, performed at the medium level"; and (2) "Fast foods worker ([DOT number] 311.472-010): light, unskilled work with a[n] SVP of 2, performed at the medium level."  (Tr. 28-29.)  The ALJ also stated that "[a]s required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period."  (Tr. 29.)  The ALJ further explained:

> The [VE] testified that a hypothetical person with the claimant's age, education, work experience, and [RFC] would be able to perform her past relevant work as a fast foods worker and a fast foods manager.  Based on the testimony of the VE, the undersigned finds that the claimant is able to perform past

16

relevant work as a fast foods worker and fast foods manager.

In comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

(*Id.*)

### C.   Analysis

The Court finds that the ALJ's decision is not supported by substantial evidence.  In light of the testimony by the VE and Plaintiff's Work History Report, the Court is not persuaded that the ALJ's determination at step four is supported by substantial evidence.  Moreover, because the ALJ failed to acknowledge the VE's testimony and opinion that Plaintiff's past relevant work as actually performed was a composite job, let alone provide the reasons for discounting this opinion, judicial review is frustrated as the Court can only speculate as to what those reasons may have been.  *See Cantu v. Comm'r of Soc. Sec.*, No. 2:19-cv-832-MRM, 2021 WL 960686, at *5 (citing *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877 (11th Cir. 2013) (per curiam)) ("Furthermore, the Court will not affirm simply because some rationale might have supported the ALJ's conclusion."); *see also Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal

17

citations omitted); *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position).

At step four, "[i]n considering whether the claimant can return to past work, the ALJ must (1) consider all the duties of the past relevant work and (2) evaluate the claimant's ability to perform the duties in light of h[er] impairments." *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 953 (11th Cir. 2018) (per curiam) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A "claimant must show that [s]he can no longer 'perform [her] past kind of work, not that [she] merely [is] unable to perform a specific job [she] held in the past.'" *Id.* (quoting *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (citing, in part, 20 C.F.R. § 404.1520(e) (1986))). "Generally, a claimant is not disabled if he or she can perform past relevant work, 'either as the claimant actually performed it or as generally performed in the national economy.'" *Bitowf v. Saul*, No. CV 1:19-00845-N, 2021 WL 1183794, at *10 (S.D. Ala. Mar. 29, 2021) (quoting 20 C.F.R. § 404.1560(b)(2)).

Although it is undisputed that an ALJ may rely on information in the DOT and testimony from a VE to determine whether a claimant can perform

her past relevant work as usually performed in the national economy,[8] the physical and mental requirements of that work must first be determined. *See* SSR 82-62 ("In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: 1. A finding of fact as to the individual's RFC. 2. A finding of fact as to the physical and mental demands of the past job/occupation. 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation."); *Woods v. Astrue*, No. 8:08-cv-1095-T-TBM, 2009 WL 2242611, *7 (M.D. Fla. July 27, 2009) (stating that "the ALJ has the duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work") (internal citations and quotation marks omitted).  As stated in SSR 82-62:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are

---

[8] *See* 20 C.F.R. § 404.1560(b)(2) (stating that a VE may offer evidence "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy," which "may be helpful in supplementing or evaluating the accuracy of the claimant's description of [her] past work" and, also, the VE "may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work"); SSR 82-61, 1982 WL 31387 ("The . . . [DOT] descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy.") (emphasis in the original).

> generally sufficient for determining the skill level, exertional demands and non[-]exertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the [DOT], etc., on the requirements of the work as generally performed in the economy.

SSR 82-62.

Moreover, "when a claimant's prior job involved functional demands and duties significantly in excess of those generally required for the type of work by employers in the national economy, it is not enough for the claimant to show that he cannot perform the demands and duties actually involved in the job." *Smith*, 743 F. App'x at 953-54 (citing *Jackson*, 801 F.2d at 1293-94). "Instead, he must show that he cannot perform the functional demands and job duties of the position generally required by employers nationwide." (*Id.* at 954.)

However, when the claimant's "past relevant work qualifies as a composite job[,]" defined as a job "that has 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT,'" then "the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform [her] previous work *as actually performed*." *Id.* at 954 (citing SSR 82-61 at *2) (emphasis added). "Past

20

relevant work may qualify as a composite job 'if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.'" *Id.* (quoting POMS DI 25005.020). "Generally, it is the claimant's burden to show that past relevant work was a 'composite job.'" *Bitowf*, 2021 WL 1183794, at *11 (citing *Smith*, 743 F. App'x at 954).

In the instant case, the VE testified that Plaintiff's past relevant work was more of a composite job. (Tr. 88.) Additionally, Plaintiff's own description of her past relevant work tends to support her contention that her past positions at Popeyes and Subway were composite jobs that entailed a combination of fast food worker and fast food manager roles. (*See* Tr. 250-52 (noting, for example, that she had supervisory roles in all three positions, and supervision of other employees accounted for at least half of her time).) Nevertheless, despite this evidence, the ALJ cites to the VE's testimony as a basis for his conclusion that Plaintiff could perform her past relevant work as a fast food worker and a fast food manager as generally performed without explicitly addressing the VE's composite job opinion. (Tr. 28-29.) Without the ALJ's explanation regarding his treatment of this evidence, "the Court is left guessing what rationale the ALJ used to support this finding." *Cantu*, 2021 WL 960686, at *5. Thus, the Court is unable to determine whether the ALJ correctly applied the law and regulations at step four.

Moreover, while Defendant attempts to provide various rationales for

the ALJ's findings at step four, as the Eleventh Circuit has pointed out, "a court may not accept . . . counsel's *post hoc* rationalizations for agency actions." *Cantu*, 2021 WL 960686, at *5 (quoting *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010)) ("Instead, '[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.' Here, although the Commissioner set forth arguments as to why Plaintiff could perform her [past relevant work as a hair stylist and retail manager] as it is generally performed in the national economy, the fact remains that the ALJ did not articulate any of these reasons in his decision."). The Court is also unpersuaded by Defendant's argument that Plaintiff can perform the past relevant work of fast food worker as generally performed. *See Cantu*, 2021 WL 960686, at *5 (citing *Smith*, at 954) ("The Court is similarly unpersuaded by the Commissioner's final argument, that because Plaintiff can perform her [past relevant work] as a retail manager as it is generally performed in the national economy, she has failed to prove that she cannot perform her [past relevant work]. The Court finds this argument unpersuasive because composite jobs must be assessed based on how they are actually performed, not how the components of a composite job are generally performed.").

Moreover, the Court agrees with Plaintiff that this error was not harmless since the ALJ restricted Plaintiff's RFC to light work, but her past

relevant work was actually performed at the medium exertion level. "If an ALJ finds that a plaintiff's [past relevant work] constitutes a composite job, the ALJ must determine whether the plaintiff has the RFC to perform the exertional demands of all the tasks associated with the composite job." *Id.* (citing *Gregory v. Astrue*, 5:07-cv-19-Oc-GRJ, 2008 WL 4372840, at *7 (M.D. Fla. Sept. 24, 2008) (finding that the ALJ's failure to sufficiently develop the record for the court to determine whether the plaintiff's past relevant work was a composite job constituted a reversible error)). Accordingly, "[t]he ALJ's decision cannot be affirmed on the basis that Plaintiff can perform one aspect of a composite job as it is generally performed at the national level." *See id.*

It is unlikely that the ALJ would have reached the same conclusion at step four if he had determined that Plaintiff's past relevant work was a composite job, in light of the RFC of light work with restrictions and the potential applicability of the Grids. Therefore, the Court cannot find that the ALJ's error was harmless. *See Cantu*, 2021 WL 960686, at *7 (finding, *inter alia*, that the ALJ's failure to determine whether the plaintiff's past relevant work was a composite job was a harmful and reversible error). *But see Fleurima v. Saul*, No. 8:19-cv-2835-T-AAS, 2020 WL 6074388, at *4 (M.D. Fla. Oct. 15, 2020) (finding that substantial evidence supported the ALJ's conclusion that the plaintiff could perform her past relevant work as an administrative assistant and that it was not a composite job where she failed

23

to object to the VE's testimony, did not raise the "possibility that her work was not past relevant work or a composite job at the hearing," and the VE never categorized the past relevant work as having "significant elements of two or more occupations so that it would have no counterpart in the DOT"); *Sumlin v. Saul*, No. 8:19-cv-3126-T-30AAS, 2020 WL 7232240, at *8 (M.D. Fla. Nov. 23, 2020) (report and recommendation adopted by 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020)) (finding that substantial evidence supported the ALJ's conclusion that the plaintiff could perform her past relevant work as a reservation clerk and that it was not a composite job based in part on the plaintiff's failure to object to the VE's testimony, or to raise the possibility that her work was not relevant work or a composite job at her hearing, her failure to introduce evidence that her past relevant work was a composite job, and noting that the VE never stated that the plaintiff's "reservation clerk work had significant elements of two or more occupations so that it would have no counterpart in the DOT").

Because the Court may not engage in fact-finding or reweigh the evidence, this case will be remanded to the ALJ for explicit findings regarding Plaintiff's past relevant work and for proper classification of such work, particularly whether it is a composite job. Because these issues are dispositive, there is no need to address Plaintiff's remaining arguments. *See Knoblock v. Colvin*, No. 8:14-cv-646-MCR, 2015 WL 4751386, at *3 (M.D. Fla.

24

Aug. 11, 2015) (citing, *inter alia*, *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983)).

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 31, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record